**WIEBENSON v. BD OF TRUSTEES, STATE EMPLOYEES' RET. SYS.**

[138 N.C. App. 489 (2000)]

MOLLY WIEBENSON, Petitioner v. BOARD OF TRUSTEES, TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent

No. COA99-842

(Filed 20 June 2000)

**Costs— attorney fees—substantial justification**

The trial court did not err in awarding petitioner $19,623.02 in costs and attorney fees under N.C.G.S. § 6-19.1 based on respondent not being substantially justified in denying petitioner her retirement benefits because: (1) the fact that a court agreed or disagreed with the government's position does not establish whether its position was substantially justified; (2) respondent had information concerning petitioner's leaves of absence and the fact that the State made representations to petitioner that she was a full-time employee participating in the Retirement System; (3) petitioner's personnel forms note the State's characterization of petitioner as a full-time permanent employee and reflect the fact that petitioner took an annual approved leave of absence; (4) at the time respondent took its position, N.C. Administrative Code title 25, rule 1D.1003 provided that periods of leave without pay do not constitute a break in service; (5) computer printouts reflect that someone with access to petitioner's records had direct knowledge of her situation as early as 1987; and (6) copies of annual statements show petitioner continued to accumulate retirement benefits during the years that she took a leave of absence.

Appeal by respondent from order entered 5 April 1999 by Judge Dennis J. Winner in Buncombe County Superior Court. Heard in the Court of Appeals 8 May 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Robert M. Curran, for the State.*

*Thomas D. Roberts for the petitioner-appellee.*

EAGLES, Chief Judge.

This case presents the question of whether the petitioner Molly Wiebenson is entitled to attorney's fees from the respondent Teachers' and State Employees' Retirement System for its improper denial of her retirement benefits.

This is the second appeal arising out of this case. The relevant facts are as follows. Petitioner worked as a full-time alcohol rehabilitation therapist for the Alcoholic Rehabilitation Center in Black Mountain, North Carolina, from October 1971 to May 1984. While working at ARC, petitioner participated in the Teachers' and State Employees' Retirement System (Retirement System). In 1984, petitioner and Evelyn Brank, another rehabilitation therapist at the Black Mountain ARC, approached Millard P. Hall Jr., the director of ARC, to explore sharing a position. Petitioner and Ms. Brank sought to each work six months out of the year. While making her inquiries, petitioner sought assurances that the job sharing plan would not jeopardize her eligibility for retirement benefits. Mr. Hall sent them a memorandum in which he stated that he had "pursued this with DHR personnel" and that petitioner and Ms. Brank could share one position. He went on to state:

> The two of you then will share on a six months basis in Molly's current position as a Rehabilitation Therapist, Grade 62. By doing so will allow each of you to maintain the benefits afforded to employees of the State of North Carolina. During the six months each of you work per year your Retirement, Insurance and other deductions you may have will be processed through the normal channels of deductions of payroll. During the months you are on leave you will be able to pay to the system your portion of these benefits and be maintained within the Retirement Insurance and other benefit packages you are currently enrolled in.

For almost eight years from 31 May 1984 to 19 January 1992, petitioner worked under the job sharing plan. The plan was implemented through recurring leaves of absence without pay whereby the petitioner would work for approximately six months and then was off for the following six months. At the end of each "off period," petitioner was reinstated to her prior status as working full time. The record is replete with evidence that respondent had knowledge of petitioner's situation. Throughout this period, respondent continued to accept retirement contributions deducted from petitioner's paycheck. Further, the Retirement System provided the petitioner with annual statements that reflected the petitioner's accumulating retirement credit each year from 1984 to 1990. These statements indicate that the petitioner was accumulating between one-half and two-thirds creditable retirement service for each calendar year.

The record also contains petitioner's "personnel action forms." These forms classify the petitioner as a permanent full-time employee

and reflect that the petitioner took leaves of absence from 1984 to 1992. Further, the record includes a computer report dated April of 1987. This untitled printout reflects the petitioner's periodic interruptions in work contributions for 1984, 1985 and 1986.

In 1991, petitioner began making inquiries to the Retirement System in preparation for her retirement. Later in 1991, respondent sent the petitioner an estimated benefits statement. In this statement, respondent calculated the plaintiff's benefits as if she had worked as a full-time employee throughout her job-sharing period. Subsequently, in November of 1991, the Deputy Director of the Retirement System J. Marshall Barnes, III informed the petitioner by letter that the job-sharing arrangement did not allow her to participate in the Retirement System. Therefore, petitioner had not been a member of the system since she began job-sharing in 1984. Barnes' letter advised the petitioner that the Retirement System would refund all retirement contributions plus interest while she had participated in the job-sharing plan.

Petitioner sought a contested case hearing from the Office of Administrative Hearings in 1994. After a hearing, an administrative law judge entered a recommended decision concluding that the petitioner was not an employee under N.C.G.S. § 135-1(10) (1999). The State Treasurer Harlan E. Boyles entered a final agency decision adopting the ALJ's determination. Superior Court Judge Dennis J. Winner upheld the final decision. On appeal, this Court reversed.

While this Court agreed that the petitioner was not an employee under N.C.G.S. § 135-1(10), we reasoned that the respondent was bound by its representations and its ratification of Hall's actions. *Wiebenson v. Bd. Of Trustees, State Employees' Ret. Sys.*, 123 N.C. App. 246, 250, 472 S.E.2d 592, 595 (1996), *aff'd on other grounds*, *Wiebenson v. Bd. Of Trustees, State Employees' Ret. Sys.*, 345 N.C. 734, 483 S.E.2d 153 (1997). The Supreme Court affirmed this Court's decision on other grounds. In its opinion, the Supreme Court held that the petitioner was an employee under G.S. § 135-1(10). *Wiebenson*, 345 N.C. at 737, 483 S.E.2d at 154. The Court reasoned that the petitioner's six month breaks were "regular approved leaves of absence," and that "these leaves of absence did not cause petitioner to become a part-time employee." *Id.* at 738, 483 S.E.2d at 155. While the petitioner was working, the State treated her as a full-time employee. *Id.* The Court held that her subsequent leaves of absence did not affect her right to retirement benefits. *Id.* at 739, 483 S.E.2d at 155.

On remand, the Superior Court entered judgment for petitioner. Pursuant to G.S. § 6-19.1 (1999), petitioner requested that the court tax costs including attorneys fees to the State. Following a hearing, the trial court entered an order making the following relevant findings and conclusions of law:

> 1. Prior to the defense of Petitioner's claim, the Respondent knew or should have known, among other relevant facts that the Department of Human Resources categorized the Petitioner as a full time permanent employee who was granted six months leaves of absence on an annual basis for the last several years of employment. The Respondent further knew that it had accepted her contributions into the retirement system, and that in fact she was being treated as a full time permanent employee who had been granted leaves of absence [sic].
>
> . . . .
>
> 1. The Respondent acted without substantial justification in defending the claim of the Petitioner.
>
> 2. That there are no special circumstances that would make the award of attorney's fees unjust.

Based on those findings, the trial court awarded the petitioner $19,623.02 in costs and attorneys fees. Respondent appeals.

The issue before this Court is whether the respondent was substantially justified in denying the petitioner her retirement benefits. Under G.S. § 6-19.1,

> In any civil action, . . . unless the prevailing party is the State, the court may in its discretion allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:
>
> (1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and
>
> (2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

"Substantial justification" means "justified in substance or in the main—that is justified to a degree that could satisfy a reasonable person." *Crowell Constructors, Inc. v. State Ex Rel. Cobey*, 342 N.C. 838, 844, 467 S.E.2d 675, 679 (1996). Our courts should not interpret this

standard so strictly as to require the "agency to demonstrate the infallibility of each suit it initiates." *Id.* Likewise, our courts should not interpret this standard so loosely as to require the agency only to show that the suit was not frivolous. *Id.* Rather, the "substantial justification" standard is a middle ground objective test. *Id.* To show that it acted with "substantial justification," the agency must demonstrate that its position was rational and legitimate to the satisfaction of a reasonable person at the time of its initial action and in light of the circumstances known to the agency. *Id.*

Respondent claims that it was "substantially justified" in its actions. First, respondent suggests that the proof of its "substantial justification" lies in the results of the lower courts. Respondent points out that the agency, the superior court, and this Court all agreed with its interpretation of G.S. § 135-1(10). Accordingly, respondent asserts that these decisions show the inherent reasonableness of its position. However, this argument impermissibly ignores two important aspects of this case. First, our courts have made clear that the fact that a court agreed or disagreed with the government's position does not establish whether its position was substantially justified. *Id.* at 845-46, 467 S.E.2d at 680 (quoting *Pierce v. Underwood*, 487 U.S. 552, 569, 101 L.Ed.2d 490, 507 (1988)). This standard is not a question of whether a party prevailed at a particular point in the litigation. *Crowell*, 342 N.C. at 845, 467 S.E.2d at 680. The question is whether the agency's position "was justified to a degree that could satisfy a reasonable person." *Id.* at 844, 467 S.E.2d at 679. Second, respondent's argument also ignores the fact that this Court opined that petitioner should receive her retirement benefits and that the Supreme Court agreed holding that she was a full time state employee.

Next, respondent asserts that it was "substantially justified" because it reasonably interpreted a novel statutory question. G.S. § 135-1(10) states in pertinent part that "[e]mployees of State agencies, departments, institutions, boards and commissions who are employed in permanent job positions on a recurring basis and who work thirty or more hours per week for nine or more months per calendar year are covered by the provisions of this subdivision." Respondent claims that one can reasonably read this statute to require an individual to work 30 hours a week for nine months a year in order to be an employee under the system. Of course, the Supreme Court ultimately concluded that respondent's interpretation was incorrect.

Under the "substantial justification" analysis we must consider the respondent's position in light of the law and facts known to the respondent. *Crowell*, 342 N.C. at 845, 467 S.E.2d at 680. The record contains ample evidence that the respondent had information concerning the petitioner's leaves of absence and that the State made representations to the petitioner that she was a full-time employee participating in the Retirement System. Initially, petitioner sought approval for her leaves of absence through her supervisor, Millard Hall. Hall wrote the petitioner a letter informing her that he had discussed the plan with "DHR personnel." Hall's letter informed her that DHR accepted the job-sharing plan and assured that she would maintain her status within the Retirement System during the months she was on leave. Additionally, the record contains the petitioner's personnel forms. These forms note the State's characterization of the petitioner as a full-time permanent employee. Further, these forms reflect the fact that petitioner took an annual approved leave of absence. At the time the respondent took its position, the North Carolina Administrative Code provided that "periods of leave without pay do not constitute a break in service." N.C. Admin. Code tit. 25, r. 1D.1003 (April 2000); *Wiebenson*, 345 N.C. at 739, 483 S.E.2d at 155. Therefore, these interferences should not have affected the petitioner's status within the Retirement System.

The petitioner has also brought forth a computer printout of her "computer database record" done in 1987. The printout reflects the petitioner's leaves of absence for 1984, 1985 and 1986. This printout indicates that someone with access to petitioner's records had direct knowledge of her situation as early as 1987. Finally, the record includes copies of annual statements that the respondent provided to the petitioner. These statements show that the petitioner continued to accumulate retirement benefits during the years that she took a leave of absence.

Despite this information and respondent's purported statutory interpretation, the respondent continued to accept the petitioner's contributions and represent to petitioner that she was a full-fledged member of the Retirement System. Respondent first informed petitioner that she was not a Retirement System member just as she was preparing to collect her retirement benefits some seven years after she began taking leaves of absence. Respondent took this position although the North Carolina Administrative Code allowed for periods of interrupted service. In light of this conduct, the respondent's actions are not justified to a degree to satisfy a reasonable person. Therefore, we now hold that the respondent was without "substantial

justification" for denying the petitioner's retirement benefits and we affirm the trial court's award of attorney's fees.

Affirmed.

Judges LEWIS and EDMUNDS concur.